**Law Offices of Ty Hyderally, PC**
96 PARK STREET
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-3581
FACSIMILE (973) 509-7090
Attorneys for Plaintiff: Linda Wagoner

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LINDA WAGONER,** | **CIVIL ACTION NO.: 06-5167(JLL)** |
| **PLAINTIFF,** | |
| **VS.** | **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| **MEDCO HEALTH SOLUTIONS, INC., JOHN DOES 1-10, AND XYZ CORP. 1-10,** | |
| **DEFENDANTS.** | |

Plaintiff, Linda Wagoner ("Wagoner" or "plaintiff"), who resides at 39 Alps Road, Wayne, New Jersey 07470, Passaic County, by way of this Complaint against the defendants, Medco Health Solutions, Inc. ("Medco"), John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively the "Defendants") hereby says:

### I. Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for: (1) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD") (Disability Discrimination); (2) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD") (Retaliation); (3) the Family Medical Leave Act, 29 U.S.C. § 2651(b) *et seq.* ("FMLA"); (4) breach of express contract; (5) breach of implied contract; and (6) breach of the implied covenant of good faith and fair dealing.

2. This court has jurisdiction due to the nature of the action and the amount in controversy. Additionally, Plaintiff has satisfied all prerequisites to bringing these claims.

3. Venue is appropriate in this court since Plaintiff resides in Passaic County and some of the causes of action occurred in Passaic County.

## II. Parties

4.   Plaintiff was the Administrative Assistant for Medco located at 100 Parsons Pond Drive, Franklin Lakes, New Jersey 07417.

5.   Defendants are subject to suit under the LAD and the FMLA.

6.   At all times referred to in this complaint, employees of the Corporate Defendants, who are referred to herein, were acting within the scope of their employment at the workplace during working hours.  Moreover, the Corporate Defendants ratified, embraced and added to their conduct.

## III. Factual Allegations

7.   Plaintiff began working as an Administrative Assistant for Medco in 2003 at a starting salary of approximately $40,000.

8.   Six months after her start date, Wagoner's salary was adjusted to $40,700, effective April 1, 2004, due to her exemplary performance.

9.   Two months following this salary adjustment and positive performance review, Wagoner went out on approved Family Medical Leave so that she could undergo hip replacement surgery.

10.   In September 2004, Wagoner returned to work, but still had to use a cane as she had difficulty walking unassisted.

11.   When Wagoner returned to work, she reported to Daniel Davison ("Davison"), in the Business Support Group of the Health Plans segment.

12.   Wagoner discussed her disability with Davison and asked him to be patient with her as she was still using a cane.

13.   In October 2004, Davison assigned Wagoner the task of moving files from one end of the department to the other end closer to his office.

14.   Davison provided no assistance to Wagoner to complete this task despite the fact that she discussed her disability with him and stated the task was difficult due to her disability.

15.   Prior to Wagoner's disability, she was never previously assigned the task of moving files from one end of the office to the other end.

2

16. Additionally, Davison demanded that Wagoner archive numerous files which was physically challenging to Wagoner due to her disability.

17. Prior to Wagoner's disability, she was never previously assigned the task of archiving files.

18. In December 2004, Wagoner informed Davison that she was scheduled to return to the hospital in February 2005, to have a second hip operation, as the prosthesis was moving.

19. Wagoner assured Davison that she would complete the task of moving files during the Christmas shutdown as there were less people at work which facilitated moving files.

20. Wagoner completed this task during the Christmas shutdown.

21. On February 2, 2005, plaintiff commenced her medical leave which was approved from February 2, 2005 to June 20, 2005.

22. During Wagoner's medical leave, on March 31, 2005, Jennifer Eckhardt ("Eckhardt"), Human Resources Manager for Medco, contacted plaintiff and advised her that her position was eliminated, effective immediately.

23. Wagoner exchanged numerous emails and letters pertaining to the fact that on March 31, 2005, she was advised that her position was eliminated, effective immediately.

24. Wagoner was outraged at such an obvious retaliatory action and expressed her anger to Eckhardt.

25. Wagoner questioned the position elimination and the termination and stated these actions were clearly retaliatory and discriminatory.

26. Medco admitted that it hired a new employee, Wendy Butterly ("Butterly"), to take over plaintiff's position, even though plaintiff was just as capable as fulfilling the position Butterly was given.

27. Butterly suffered from no disability to Medco's knowledge.

28. The main difference between Butterly and Wagoner was that Wagoner was disabled and on a medical leave.

29. Eckhardt informed plaintiff that she would still have benefits and stated that Wagoner should apply for other positions.

30. Subsequently, Wagoner applied for eleven (11) positions for which she was qualified.

31. Out of all of these applications, Defendants provided Wagoner only two interviews.

3

32.     Wagoner questioned Eckhardt repeatedly why she was not being interviewed.

33.     Wagoner then discovered that Medco was refusing to interview her because she was disabled.

34.     Wagoner also discovered that Medco was refusing to interview her because she was on medical leave.

35.     Thus, Medco was giving preferential treatment to non-disabled employees in allowing them to interview for open positions.

36.     Melinda Boss, a non-disabled Administrative Assistant, was allowed to move laterally into an Administrative Assistant position that Wagoner applied for, but did not get to interview for.

37.     Additionally, Medco was giving preferential treatment to employees, not on medical leave, in allowing them to interview for open positions.

38.     Medco's actions violated its own company policies with regard to refusing to interview Wagoner due to her disability and/or medical leave status.

39.     Medco's policies allow for employees on medical leave to apply for an open position.

40.     Medco's policies preclude managers from refusing to interview an employee because the employee is on medical leave.

41.     On June 16, 2005, Wagoner informed Eckhardt that her return to work date was June 20, 2005, and her doctor released her to return to work.

42.     On June 17, 2005, Terri Rafkin ("Rafkin"), Director of Human Resources, admitted that Bhavesi Modi ("Modi"), a hiring manager for the Key Accounts position, refused to interview Wagoner because she was on medical leave.

43.     Rafkin stated that Medco would work with the manager to arrange for a mutually convenient time to interview next week.

44.     On June 17, 2005, Wagoner responded that she thought Modi had already hired someone and stated that she did not want just a "courtesy interview." Wagoner requested Rafkin, Eckhardt, and Karin Princivalle ("Princivalle") to look into the matter.

45.     On June 20, 2005, Eckhardt sent Wagoner correspondence stating that her position was "eliminated effective as of the date of this letter."

46.   Eckhardt further wrote that Wagoner would receive four (4) weeks of severance pay and benefits if Wagoner signed a document that would preclude her from initiating legal action against Medco.

47.   Eckhardt then wrote that Wagoner's position was eliminated June 20, 2005 – the date Wagoner's medical leave ended – when in fact Eckhardt was well aware that Wagoner's position was eliminated on March 31, 2005 - while Wagoner was still on medical leave.

48.   This statement is highly indicative of Medco's intent to violate the law.

49.   Wagoner expressed outrage at such a retaliatory action and asked about the Key Account position that Medco contractually promised Wagoner could interview for.

50.   On July 1, 2005, Rafkin responded to Wagoner with a copy of her email to Eckhardt and Princivalle, stating that the Key Accounts position "was filled last week."

51.   Thus, Medco breached its contractual obligation to Wagoner to allow her to interview for the position.

52.   Unsurprisingly, Princivalle and Eckhardt stood by silently and made no comment to this email.

53.   At the time of her termination, plaintiff was making a salary of $40,700.  She expected a salary increase in April 2005; however, Medco failed to give her an increase because she was on medical leave.  Further, plaintiff received paid vacation of 2 weeks per year, company paid holidays, 7 sick days, 7 personal days, medical benefits, dental insurance, vision insurance, prescription coverage,

54.   life insurance, 401k benefits, long term care benefits, short term disability insurance, and long term disability insurance.

55.   These benefits of employment make up plaintiff's claim for damages.

### Count I
### (New Jersey Law Against Discrimination)
### (Disability/ Handicap Discrimination)

56.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

57.   The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, by discriminating against

Plaintiff due to Plaintiff's handicap and/or disability and retaliating against Plaintiff for complaining about such discrimination.

58.   As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, and/or aggravation of a previously existing mental or emotional and physical condition. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

59.   Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**Count II**
**(New Jersey Law Against Discrimination)**
**(Retaliation)**

60.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

61.   The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.,* by retaliating against Plaintiff for complaining about such discrimination.

62.   As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, and/or aggravation of a previously existing mental or emotional and physical condition. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

63.   Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count III
### (Family Medical Leave Act, 29 U.S.C. § 2651(b) *et seq.*)

64.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

65.   The foregoing facts and circumstances demonstrate that Defendants have violated the Family Medical Leave Act, 29 U.S.C. § 2651(b) *et seq.* (the "FMLA").

66.   As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, and/or aggravation of a previously existing mental or emotional and physical condition. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

67.   Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### Count IV
### (Breach of Express Contract)

68.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

69.   Defendants had contractual obligations to plaintiff that were set forth in their oral representations and/or their handbook and other employment documents.

70.   Defendants' actions breached the contractual obligations set forth in these documents.

71.   Additionally, in October 2004, Wagoner applied for additional physical therapy that was denied by United Healthcare as the medical plan did not allow for additional therapy.

72.   Andrew Gregg, Secretary, Employee Benefits Committee for Medco, told Wagoner to get a letter of necessity from her doctor to appeal the denial of benefits.

73.   Thus, Wagoner believed, based on Gregg's representation, that her additional physical therapy would be approved.

74.   Wagoner obtained the letter of necessity and provided it to the Employee Benefits Committee for Medco and United Healthcare.

7

75. In November 2004, Medco advised plaintiff that her request for additional physical therapy was denied as the medical plan did not allow for additional therapy.

76. This was the same reason for the denial in October 2004.

77. Wagoner expressed great displeasure with Medco that it would give her the false pretenses that additional physical therapy would be approved if she provided a letter of necessity.

78. In January 2005, Wagoner utilized the Ethics Grievance procedure to file a complaint pertaining to the denial of additional physical therapy.

79. Wagoner filed her Ethics Grievance with Medco's Human Resources department and stated that it was unfair treatment of employees to deny medical benefits while it was sending employees for trips to Puerto Rico.

80. Medco's policies forbid any acts of retaliation against employees who utilize the Ethics Grievance procedure.

81. In the middle of February 2005, Wagoner received a telephone call from Michael Clark, Esq. ("Clark"), in-house counsel and Ethics officer for Medco.

82. Wagoner expressed openly that she had fears of retaliation for utilizing the complaint procedures.

83. Clark assured Wagoner that she had nothing to fear for filing a complaint and that she would not lose her job.

84. On March 2, 2005, Clark informed Wagoner that he had concluded looking in to the matter and speaking to witnesses, and Medco determined that no ethics violation occurred.

85. Later that same month, on March 31, 2005, Jennifer Eckhardt, Human Resources Manager for Medco, contacted plaintiff and advised her that her position was eliminated, effective immediately.

86. Subsequently, defendants engaged in further retaliatory behavior that is set forth in the above paragraphs.

87. These actions reflect a breach of Medco's policies, as the actions were in retaliation of Wagoner filing an ethics complaint.

88. Defendants' actions give rise to the claim of breach of express contract.

89. As a direct and proximate result of the actions of Defendants, Plaintiff has been damaged.

## Count V
## (Breach of Implied Contract)

90.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

91.    Defendants made numerous oral representations.

92.    Defendants breached these oral representations.

93.    Defendants' actions give rise to the claim of breach of implied contract.

94.    As a direct and proximate result of the actions of Defendants, Plaintiff has been damaged.

## Count VI
## (Breach of the Implied Covenant of Good Faith and Fair Dealing)

95.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

96.    Defendants had contractual obligations to plaintiff as reflected above.

97.    Defendants have breached these obligations.

98.    Defendants' actions give rise to the claim of breach of the implied covenant of good faith and fair dealing.

99.    As a direct and proximate result of the actions of Defendant, Plaintiff has been damaged.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against the Defendants jointly and severally, as follows:

      A.    Compensatory damages of not less than $650,000;

      B.    Damages for lost wages and benefits, back pay, front pay (or reinstatement);

      C.    Damages for humiliation, mental and emotional distress;

      D.    Statutory damages, if applicable;

      E.    Punitive damages and or liquidated damages where permitted by law;

      F.    Attorneys' fees and costs of suit;

      G.    Lawful interest – including pre-judgment interest on lost wages;

      H.    Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and

      I.    Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 4:35-1(a) and (b), plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

In accordance with Rule 4:25-4, TY HYDERALLY is hereby designated as trial counsel on behalf of plaintiff.

## R. 4:5-1(b)(2) CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:        April 8, 2008

LAW OFFICES OF TY HYDERALLY, PC
*Attorneys for Plaintiff*

By:    _____
TY HYDERALLY, Esq.
For the Firm

H:\1Law Offices of Ty Hyderally\Wagoner Linda\Pleadings\040808.COM -- 1st Amended.doc