NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA WAGONER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 06-5167 (JLL) |
| MEDCO HEALTH SOLUTIONS, INC., | ) **O P I N I O N** |
| Defendant. | ) |

**LINARES, District Judge.**

This matter comes before the Court on the motion [CM/ECF #20] of Defendant Medco Health Solutions, Inc. ("Medco") for summary judgment against Plaintiff Linda Wagoner ("Plaintiff" or "Wagoner") pursuant to Federal Rule of Civil Procedure 56. This Court exercises jurisdiction pursuant to its federal question and supplemental jurisdiction. 28 U.S.C. §§ 1331, 1367. For the reasons set forth in this Opinion, Defendant's motion is granted in part and denied in part.

BACKGROUND

Medco hired Wagoner as an administrative assistant in its Account Management Department on June 16, 2003. On June 16, 2004, Wagoner underwent hip replacement surgery, and remained out of work under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., until September 2004. (Def. 56.1 Statement ¶ 3.) After her leave ended, she returned to work as an administrative assistant in Medco's Health Plans Business Support Group ("HPBS"), under

her new supervisor, Vice President Dan Davison ("Davison").  (Id. ¶¶ 4-5.)

A.   **Wagoner's Return to Work and Physical Therapy**

Upon her return to work, Wagoner requested a handicapped parking spot, used a cane to assist her in walking, and required the assistance of another staff member in job-related physical activities.  (Def. 56.1 Statement ¶¶ 6-8; Pl. Opp. 56.1 Statement ¶¶ 6-8.)  Wagoner went to physical therapy following her surgery during September and October 2004, but discontinued therapy after reaching her health plan's ceiling on therapy visits.  (Def. 56.1 Statement ¶ 12; Pl. Opp. 56.1 Statement ¶ 9.)  After requesting additional therapy from her health plan, suffering a denial from the health plan, and losing her appeal of that denial before an internal Medco committee, Plaintiff continued physical therapy at her own expense through January 2005.  (Pl. Opp. 56.1 Statement ¶ 9.)  In her communications with Medco about her difficulties with obtaining coverage for her physical therapy sessions, Wagoner received information about how to proceed from Andrew Gregg ("Gregg"), a Medco employee who served on Medco's employee benefits committee.  (Def. 56.1 Statement ¶¶ 13-14.)  While the parties differ over the contents of the Wagoner-Gregg conversations, it is undisputed that Gregg did not guarantee any particular result on the internal Medco appeal.  (Id. ¶ 14; Pl. Opp. 56.1 Statement ¶ 13.)

After Medco's denial of coverage for Wagoner's physical therapy, Wagoner called a Medco grievance hotline and complained about the denial of coverage.  (Def. 56.1 Statement ¶ 19.)  Her complaint was referred to a Medco ethics officer, Michael Clark, Esq. ("Clark").  Clark contacted Wagoner during February 2005, and eventually concluded that no ethics violation had occurred.  (Id. ¶¶ 21-22.)

**B.     Davison's Decision to Terminate and Wagoner's Second Medical Leave**

In late 2004, Davison decided that the HPBS group needed an additional financial analyst.  (Id. ¶ 24.)  Under a Medco "neutral head count" policy, Davison had to eliminate another position in his group in order to add a financial analyst.  (Id.)  In December 2004, Davison decided to eliminate Wagoner's position in order to make room for the financial analyst.  (Pl. Opp. 56.1 Statement ¶ 24.)

Simultaneously, Wagoner learned that her initial hip treatment had not been successful, and she informed Davison during December 2004 that she would require additional surgery and additional medical leave.  (Def. 56.1 Statement ¶¶ 28-30; Pl. Opp. 56.1 Statement ¶ 28.)  Wagoner's surgery was on February 2, 2005, coinciding with the start of her second medical leave.  (Def. 56.1 Statement ¶ 29.)

**C.     Wagoner's Termination**

Wagoner received notice that her position in the HPBS group would be eliminated on March 31, 2005, from Medco's Human Resourse Manager Jennifer Eckhardt ("Eckhardt").  (Id. ¶ 32.)  Eckhardt encouraged Wagoner to seek employment elsewhere at Medco, so that she would have a position to return to at the end of her medical leave.  (Id. ¶ 37.)  Wagoner applied for eleven positions at Medco while she was on medical leave, and received no offers on any of them from Medco.  (Pl. 56.1 Statement ¶¶ 13-24.)

Wagoner was scheduled to return to work after her second medical leave on June 20, 2005.  (Pl. Opp. 56.1 Statement ¶ 45.)  Medco made it clear to Wagoner prior to that date that she would be terminated and offered a severance package, which Wagoner declined.  (Def. 56.1 Statement ¶¶ 45-48.)

Subsequent to her termination, Wagoner filed suit on September 21, 2006. Medco removed to this Court on October 26, 2006. Defendant filed the instant motion for summary judgment on October 2, 2008.

## DISCUSSION

A.   **Legal Standard for Summary Judgment**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

B.  **Discriminatory Discharge**

In a termination case, NJLAD claims operate under the familiar McDonnell-Douglas burden-shifting scheme. 411 U.S. 792 (1973). The plaintiff bears the burden of making out a prima facie case, which requires that "plaintiff (1) belongs to a protected class, (2) was performing in the position from which she was terminated, (3) nevertheless was fired, and (4) the employer sought someone to perform the same work after she left." Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1145 (N.J. 2005). Once the prima facie case has been established, it creates a presumption of discrimination. Zive, 867 A.2d at 1145. "The defendant then bears the burden of rebutting that presumption by articulating a legitimate and non-discriminatory reason for the termination, and the plaintiff is entitled to show that the reasons advanced by the defendant are a pretext for discrimination." Id. Demonstrating pretext requires a plaintiff to meet a two-prong disjunctive test:

> [T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); Zive, 867 A.2d at 1144.

Medco argues that Wagoner has not met her burden in establishing the fourth element of her prima facie case, and also that she cannot meet her burden in demonstrating that Medco's rationale for terminating her was pretextual. (Def. Br. at 9, 16.) Wagoner maintains that even though Medco eliminated her position, she can establish an inference of discrimination sufficient

for the fourth prong of her prima facie case, and that the timing of the decision to terminate her was sufficiently suspicious to demonstrate pretext. (Pl. Opp. Br. at 7-8, 18-19.)

### 1. Elimination of the Position and Inference of Discrimination

The fourth element in a prima facie case of termination discrimination in New Jersey law is that the employer sought someone else to perform the same work after the employee was terminated. Zive, 867 A.2d at 1145. This requirement is a termination-specific version of the general requirement of an employment discrimination case that the plaintiff demonstrate some conduct sufficient to infer discrimination on the part of the employer. Id. at 1141. Wagoner argues that her version of the factual scenario surrounding the elimination of her position, if credited by a factfinder, demonstrates an inference of discrimination by a preponderance of the evidence. (Pl. Opp. Br. at 8.)

Here, Wagoner offers to testify that she communicated to Davison in mid-December of 2004 her intention to take additional medical leave. (Id. at 9.) Medco points to deposition testimony by Davison that he was mulling over the decision to eliminate Wagoner's position in order to obtain an additional financial analyst in October of 2004. (Def. Reply Br. at 4.) Considering a decision, however, is distinguishable from making the decision, and Medco states that the decision to eliminate the position was made in December 2004. (Id. at 5.) The record evidence, therefore, supports an inference of discrimination when examined in the light most favorable to Wagoner, the nonmoving party: there is ample evidence in the record to support Plaintiff's argument that the decision to eliminate her position was nearly contemporaneous with her revealing to Davison that she would be taking additional medical leave.

### 2. Pretext

Medco's argument concerning pretext focuses on whether or not Wagoner can show by a preponderance of the evidence that Medco's legitimate rationale for eliminating her position was a mere pretext for discrimination. (Id. at 19.) This Court finds that the timing of Davison's decision to eliminate Wagoner's position, being contemporaneous with her communication to him that she intended to take additional disability leave, is sufficient to render Medco's legitimate nondiscriminatory reason non-credible when examined in the light most favorable to Wagoner. See Lackman v. Recovery Servs. of N.J., Inc., No. 06-2016, 2008 WL 583660, at *8 (Feb. 13, 2008) (timing can be suggestive of discrimination in the proper case). Such evidence would permit a factfinder to "disbelieve the employer's articulated legitimate reasons" and ultimately find for Plaintiff. Fuentes, 32 F.3d at 764.

Having found that Wagoner has a viable theory on which to demonstrate both her prima facie case and pretext, this Court need not examine every argument by the parties on the issue of termination. Summary judgment on Plaintiff's claim of discriminatory discharge, therefore, is denied.

### C. Discriminatory Hiring

In the NJLAD discriminatory hiring context, "the plaintiff must demonstrate that he or she (1) belongs to a protected class; (2) applied for or held a position for which he or she was objectively qualified; (3) was not hired or was terminated from that position; and (4) the employer sought to, or did fill the position with a similarly-qualified person." Gerety v. Atlantic City Hilton Casino Resort, 877 A.2d 1233, 1237 (N.J. 2005). Medco argues that Wagoner

cannot meet her burden on the final element of her prima facie case, as she failed to produce competent evidence concerning the qualifications of the persons selected to fill the positions to which she applied. (Def. Br. at 14-16; Def. Reply Br. at 12-14.) Wagoner seeks to support her discriminatory hiring, or "blacklisting," claim by comparing the qualifications of the individuals hired by Medco with her own credentials, and argues that Medco misinformed hiring managers by telling them that Wagoner could not be interviewed while on medical leave. (Pl. Opp. Br. at 22, 29.) Additionally, Wagoner argues that this Court should draw an inference of discrimination by Medco on two individuals hired for whom Medco did not produce information in discovery. (Id. at 28-29.)

This Court finds that Wagoner's argument that Medco deceived its hiring managers into not interviewing Wagoner based on her leave status does not present a material issue of fact. To support this argument, Wagoner presents an email from a Medco human resources employee to a hiring manager admitting to a misunderstanding about Medco policies, and that Wagoner could be interviewed by Medco personnel while on leave. (Pl. Opp. Br. at 22.) Such an admission of error does not amount to supporting an inference of discrimination, when Wagoner was, in fact, interviewed for two of the eleven positions for which she applied.

In order to establish the fourth element of her prima facie case, Wagoner must present the qualifications for the position, identify the individual selected, and demonstrate that the individual's qualifications made her less-qualified or similarly-qualified than Wagoner for the position. Marley v. CORT Furniture Rental Corp., No. 06-4926, 2008 WL 4066345, at *3-5 (D.N.J. Aug. 26, 2008). Wagoner has presented the required qualification information for various positions at Medco for which she applied. (Vorih Cert. Ex. 15-41.) She has also

provided information on the individual selected for nine of the eleven positions at issue. (Id.) With regard to each of those nine positions, Wagoner contends in her brief, supported by her certification, that she was at least as qualified as each candidate selected. (Pl. Opp. Br. at 23-28; Wagoner Cert. at 3-6.)

Medco contends that Wagoner cannot meet her burden based on this evidence because the resumes of the successful candidates are inadmissible hearsay, and because Wagoner's proffering of her own qualifications as superior are too vague and conclusory to meet her burden. (Def. Reply Br. at 14-15.) A resume offered to prove the education and occupations of an individual is offered for the truth of its contents. See Thomas v. Sheahan, 556 F. Supp 2d 861, 878 (N.D. Ill. 2008) (finding resume used to admit hearsay, but that error was harmless); Hamilton v. Spraying Sys., Inc., No. 02-9093, 2004 WL 2191330, at *16 n.16 (N.D. Ill. Sept. 28, 2004). The resumes are not presented accompanied by the affidavits of individuals who can testify as to the veracity of their contents or preparation; instead, they are presented through the certification of Wagoner's counsel. As such, the qualifications contained in the resumes are inadmissible hearsay, and Wagoner cannot support her conclusions as to the nine positions for which she submitted resumes. Dunkin' Donuts Inc. v. Patel, 174 F. Supp 2d 202, 212 (D.N.J. 2001) ("Genuine issues of material fact cannot be raised by speculation and conclusory allegations."). For those nine positions, therefore, this Court finds that Wagoner has not met her burden in presenting a prima facie case of hiring discrimination, and grants summary judgment to Medco.

There is, however, a disputed material fact as to whether or not discovery has been provided to Wagoner with respect to two of the positions for which she applied, DMA 02229 and SYST 02031. Wagoner argues that summary judgment would be at best premature prior to

receiving discovery on these two positions, while Medco maintains that discovery was provided with respect to these two positions on October 18, 2007. (Pl. Opp. Br. at 28-29; Def. Reply Br. at 15-16.) This Court therefore finds that summary judgment will be denied with respect to Medco's decision not to hire Wagoner for DMA 02229 and SYST 02031, but that Medco may move for summary judgment based only upon Wagoner's failure to state a prima facie case on those two positions once the discovery dispute is resolved.

**D.     Retaliation**

New Jersey's Law Against Discrimination ("NJLAD") makes it is unlawful for "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under [the NJLAD.]" N.J.S.A. § 10:5-12(d). To establish a prima facie case of retaliation under the NJLAD, a plaintiff must show that the: "(1) claimant engaged in a protected activity known to the employer, (2) claimant thereafter was subjected to adverse employment decision by the employer, and (3) there was a causal link between the two." Jamison v. Rockaway Twp. Bd. of Educ., 577 A.2d 177, 182 (N.J. Super. Ct. App. Div. 1990) (citation omitted). See also Ferraro v. Bell Atlantic Co., Inc., 2 F. Supp 2d 577, 587 (D.N.J. 1998). Once a plaintiff establishes a prima facie case of retaliation, the defendant must "articulate a legitimate, non-retaliatory reason for the decision." Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995) (citation omitted). Next, "the plaintiff must come forward with evidence of a discriminatory motive of the employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive." Id. Defendants herein contend that Plaintiff's retaliation claim fails because Plaintiff did not engage in a protected activity, did not make anything known about protected activities to her supervisor,

fails to establish causation, and presents no evidence of pretext.  (Def. Br. at 21, 24, 25-26.)

        **1.**      **Protected Activity**

Wagoner asserts that she engaged in several protected activities: her ethics complaint regarding the denial of additional physical therapy, her request for accommodation, and taking medical leaves of absence.  (Pl. Opp. Br. at 20.)  Defendant argues that none of these constitute protected activities under the NJLAD in this case.  (Def. Reply Br. at 16.)

Neither party cites any cases discussing the proposition that taking medical leave is protected activity under the NJLAD.  Taking leave under the FMLA is a protected act under the FMLA in this Circuit.  Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146-47 n.9 (3d Cir. 2004); Petras v. IAP Worldwide Serv., Inc., No. 07-170, 2008 WL 5395750, at *12 (D.N.J. Dec. 23, 2008).  This Court, however, has been unable to uncover a case holding unambiguously that taking medical leave is a protected act under the NJLAD.  Compare DiMare v. Metlife Ins. Co., No. 07-4268, 2008 WL 2276007, at *2-3 (D.N.J. June 2, 2008) (recognizing, but not reaching, issue of whether medical leave is a protected activity under the NJLAD) with Nusbaum v. CB Richard Ellis, Inc., 171 F. Supp 2d 377, 388 (D.N.J. 2001) (stating that requesting medical leave is protected activity under the NJLAD).  This Court finds that the language of the retaliation provision of the NJLAD fails to support Plaintiff's claim.  It forbids:

> any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J.S.A. § 10:5-12(d).  The language of the statute does not embrace Wagoner's conduct: she did not oppose a practice or file, testify, or assist in any proceeding by taking her own leave.  Id.  Wagoner's taking of medical leave, therefore, is not a protected activity under the NJLAD.

With respect to Wagoner's internal ethics complaint, this Court finds that whether or not it was a protected activity, Davison did not know of the complaint prior to deciding to eliminate her position in December of 2004.  At her deposition, Wagoner testified that she made her ethics complaint on January 12, 2005; by the time she engaged in any putative protected activity, therefore, the decision to eliminate her position had already been made.  (Wagoner Dep. Tr. at 85.)  To support a retaliation claim under the NJLAD, an activity must be both protected and known to the decisionmaker when action is taken against the employee.  Bibby v. Commerce Bancorp, Inc., No. 06-289, 2008 WL 723523, at *7 (Mar. 17, 2008).  Here, this Court finds that when Davison made the decision to terminate in December 2004, he could not have known of the January 2005 ethics complaint, and that complaint, therefore, cannot support retaliation under the NJLAD based on Wagoner's termination.

Plaintiff also predicates her retaliation claim under the NJLAD on her "blacklisting," or Medco's failure to hire her for one of the eleven positions she applied for after receiving notice of her termination.  (Pl. Opp. Br. at 30.)  Under this theory, Wagoner's ethics complaint occurred well before she applied for those positions, and various actors at Medco would have had knowledge of the issue when the facts are examined in the light most favorable to Wagoner.  Both parties admit that Wagoner's ethics complaint contained reference to Wagoner's disability, her physical therapy, and Medco's ethics policy.  (Pl. Opp. Br. at 30; Def. Br. at 21; Def. Rule

56.1 Statement ¶ 21; Pl. Opp. Rule 56.1 Statement ¶ 21.)  Protected activity under the NJLAD need not be in any specific form, such as an EEOC complaint, but it must not be too vague and must allege illegal conduct.  Barber v. CSX Distribution Servs., 68 F.3d 694, 701-02 (3d Cir. 1995); DeJoy v. Comcast Cable Commc'ns Inc., 968 F. Supp. 963, 988-89 (D.N.J. 1997).  Here, the alleged impropriety in the ethics complaint is not illegal discrimination: it is failure to adhere to an internal Medco ethics policy, specifically as it pertains to an internal health benefits appeal.  (Pl. Opp. Br. at 30; Def. Br. at 21; Def. Rule 56.1 Statement ¶ 21; Pl. Opp. Rule 56.1 Statement ¶ 21.)  Medco's stated policy calls for a "fair and equitable work environment in which its employees—as well as Medco itself—can achieve their full potential."  (Pl. Opp. Br. at 30.)  Such a policy is not sufficiently closely related to illegal discrimination to demonstrate protected activity under the NJLAD.  DeJoy, 968 F. Supp. at 988-89.  See also Monaco v. American Gen. Assurance Co., 359 F.3d 296, 309 (3d Cir. 2004) ("We are satisfied that New Jersey law does not provide a separate breach of contract cause of action on the basis of generalized anti-discrimination language in an employee handbook where the alleged discrimination would be in violation of the NJLAD.").

     Finally, Wagoner asserts that her requests for disability accommodation support her retaliation claim under the NJLAD.  The accommodations sought by Wagoner include a request for assistance in moving files, a request for a handicapped parking space, and a request for additional physical therapy.  Requesting accommodations for a disability is a protected activity under the NJLAD.  Barboza v. Greater Media Newspapers, No. 07-635, 2008 WL 2875317, at *4 (D.N.J. July 22, 2008).  This Court finds that Wagoner's requests for accommodation comprise protected activities known to her employer.

### 2. Retaliation for Wagoner's Accommodation Requests

This Court finds that Wagoner's NJLAD retaliation claim predicated upon her requests for accommodation survive summary judgment. Both causation and pretext can be demonstrated by Wagoner through the various inconsistencies in the Davison and Eckhardt depositions, in which Medco's human resources department can be demonstrated to be providing negative performance information about Wagoner to Medco hiring managers, based upon Davison's feedback, which Davison denied giving at his deposition. (Pl. Opp. Br. at 31-32.) As these facts, when examined in the light most favorable to Wagoner, would suffice to permit a reasonable factfinder to reach a verdict in Plaintiff's favor, summary judgment on the NJLAD retaliation claim is denied, but only to the extent that the claim is predicated on Plaintiff's requests for accommodation. Pennsylvania Coal Ass'n, 63 F.3d at 236.

### E. FMLA Claim

Although the Amended Complaint is somewhat unclear regarding what kind of FMLA claim Wagoner sought to establish, in her Opposition papers she discusses her claims entirely in terms of retaliation, and this Court finds that her claim is best construed as one for retaliation. The FMLA prohibits retaliation against individuals who take FMLA leave or engage in activity protected by the FMLA. Conoshenti, 364 F.3d at 146-47 n.9; Petras, No. 07-170, 2008 WL 5395750, at *12. In order to make out a prima facie FMLA retaliation claim, a plaintiff must satisfy three elements: "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." Conoshenti, 364 F.3d at 146. The burden of articulating a legitimate, non-discriminatory rationale then shifts to the

employer, after which the employee must meet her burden in demonstrating pretext. Bearley v. Friendly Ice Cream Corp., 322 F. Supp 2d 563, 572-73 (M.D. Pa. 2004).

In the instant motion, Medco argues that Wagoner cannot make out an FMLA retaliation claim for three reasons: first, she was not on FMLA leave when she was actually terminated; second, Davison decided to eliminate her position prior to learning of her need for additional leave; and last, Wagoner is unable to show pretext. (Def. Br. at 29-32.) This Court finds that as both parties concede that Davison's decision to eliminate Wagoner's position was made in December 2004, whether or not her allowable FMLA ended in February 2005 is irrelevant. Otherwise, the facts relevant to Wagoner's FMLA claim do not differ significantly from her discrimination and retaliation claims under the NJLAD. With respect to the timing of Davison's decision, Medco argues that because Davison decided to terminate her before she disclosed her need for further surgery and leave, she cannot demonstrate a causal relationship between her FMLA leave and her termination. (Def. Br. at 31.) Wagoner disputes Medco's timeline, and claims that Davison made the termination decision after learning of Wagoner's continuing medical issues. (Pl. Opp. Br. at 9-10.) This Court finds that the material facts with regard to the timing of Davison's decision in December 2004 are in dispute, and this dispute prevents summary judgment on Wagoner's FMLA retaliation claim for her termination, as the issue of Davison's credibility goes to both causation and pretext. Summary judgment on Wagoner's FMLA claim for retaliation, therefore, is denied.

F.   **Contract Claims**

The final three counts of the Amended Complaint set forth causes of action based upon

an express contract, an implied contract, and the implied covenant of good faith and fair dealing with respect to Wagoner's appeal of Medco's health plan refusing to grant her additional physical therapy visits beyond the twenty permitted in the plan. (Am. Compl. at 7-9.) Medco argues that Wagoner fails to demonstrate mutual assent, consideration, or breach. (Def. Br. at 36, 38.) Wagoner argues that a contract existed based upon Gregg's representation that her appeal would be considered if she supplied a letter verifying her medical necessity, and that Medco breached that contract when it repeated the conclusions from the health plans denial of Wagoner's request. (Pl. Opp. Br. at 34-35.)

This Court finds that Wagoner has not set forth a case that pleads a breach of contract. Assuming arguendo that an implied or express contract existed requiring Medco to consider Wagoner's appeal, the only evidence she places in the record in support of breach is that 1) her appeal was denied, and 2) that Medco repeated the reasoning used by the health plan. (Id. at 34-35.) This evidence amounts to no more than speculation about what occurred in her appeal process, and fails to set forth any material dispute as to the facts. Ridgewood Bd. of Educ., 172 F.3d at 252. Wagoner attempts to thread a vanishingly small legal needle in her argument that Medco could have avoided liability if it had "simply told Ms. Wagoner that [the health plan] was correct" in its denial. (Pl. Opp. Br. at 35.) Such an argument, that Medco's internal appeal process breached the contract with Wagoner because it repeated language from the plan's determination instead of simply using a different formula, does not address the issue of what was actually considered by Medco in the appeal. This argument also requires this Court to ignore the elaboration provided to Wagoner by Medco's Vice President Edward Redling, which made it clear that Medco's decision was based upon its characterization that Wagoner's physical therapy

was not a matter of physical necessity, which was the same position taken in its letter rejecting her appeal. (Def. 56.1 Statement ¶¶ 15-18; Pl. Opp. 56.1 Statement ¶¶ 15-18.) The fact that Medco and the health plan characterized Wagoner's therapy in a different manner than Wagoner's doctor does not supply an inference that her appeal was not considered. At summary judgment, the plaintiff bears some burden to demonstrate more than metaphysical doubt as to the facts, and Wagoner does not present more than a metaphysically deficient version of the Medco appeal process at this stage. Matsushita Elec. Indus. Co., Ltd., 475 U.S. 574, 586-87. Summary judgment is, therefore, granted in favor of Defendant on Counts IV and V of the Amended Complaint.

Similarly, Wagoner has not set forth facts sufficient to demonstrate any violation of the implied covenant of good faith and fair dealing in any putative contract created in her conversation with Gregg. "Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 864 A.2d 387, 395 (N.J. 2005). Breach of the covenant requires evidence that one party acted in bad faith by denying the benefit of the bargain to the other. Brunswick Hills Racquet Club, Inc., 864 A.2d at 395. Here, for the reasons elaborated immediately supra, Wagoner has failed to establish that she was denied the benefit of any bargain Gregg created. Wagoner has not placed before this Court any material fact indicating that Medco did any more than differ with the characterization of her physical therapy as a medical necessity. (Def. 56.1 Statement ¶¶ 15-18; Pl. Opp. 56.1 Statement ¶¶ 15-18.) As such, she cannot show that she was denied the benefit of any bargain that may have been established in her discussion with Gregg, and summary judgment is granted to Medco on Count

VI of the Amended Complaint.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion for summary judgment is denied in part and granted in part. An appropriate Order accompanies this Opinion.


DATED: March 17, 2008                     /s/ Jose L. Linares
                                      United States District Judge